UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA          :

      - v. -                     :            07 Cr. 776 (RJH)

JOSE V. TERRAZAS,                 :
  a/k/a "Jose Victor Terrazas-Casares,"
  a/k/a "Roberto Martinez-Rivera,"  :

        Defendant.             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


# MEMORANDUM OF LAW IN OPPOSITION
# TO DEFENDANT JOSE V. TERRAZAS'S MOTION
# TO DISMISS THE INDICTMENT


MICHAEL J. GARCIA
United States Attorney
Southern District of New York
Attorney for the United States of America


Adam S. Hickey
Assistant United States Attorney

   – Of Counsel –

# TABLE OF CONTENTS

I.   **Background** ...................................................................................................................1

II.  **Statement of Facts** .........................................................................................................2

III. **Argument** ......................................................................................................................5

    A.    Materiality Is Not An Element Of Section 1015(a) ..............................................5

    B.    A Reasonable Juror Could Conclude That The Defendant's False Statements Were Material ......................................................................................................11

IV.  **Conclusion** ..................................................................................................................16

The Government respectfully submits this response to the motion to dismiss of the defendant Jose V. Terrazas (the "defendant"). The defendant argues that Indictment 07 Cr. 776 (RJH) (the "Indictment") should be dismissed because materiality is an element of the charged offense, Title 18, United States Code, Section 1015(a), and the false statements alleged therein are immaterial as a matter of law. The overwhelming weight of authority holds that materiality is not an element of the charged offense, however, and even if it is, the defendant's denials of any criminal record, when in fact he had been thrice charged with statutes that punish the sexual abuse of children, were clearly material.

## I. BACKGROUND

The Indictment was filed on August 20, 2007 and unsealed and assigned to this Court, upon the defendant's arrest, on October 17, 2007. The Indictment charges the defendant in two counts with making a series false statements under oath in a citizenship proceeding, first in his sworn naturalization application (Count One) and then during his citizenship interview (Count Two). On January 23, 2008, the defendant moved to dismiss the Indictment, arguing that the Government must prove that the defendant's false statements were material to the immigration authorities reviewing his naturalization application, and that under the Immigration and Naturalization Act, as amended, and its progeny of federal regulations, the defendant's prior arrests were not material to that application. Oral argument on the motion is presently scheduled for March 20, 2008, at 2 p.m.

## II. STATEMENT OF FACTS

The defendant, a citizen of Mexico, has consistently lied to the authorities in pursuit of immigration benefits in the United States. In or about August 7, 1976, the defendant presented a counterfeit "alien registration" card (bearing the false name of "Roberto Martinez-Rivera") at the Mexican border. (D 113-14, 116-17.)[1] In connection with that, he pleaded guilty to presenting a counterfeit U.S. immigration document, in violation of 8 U.S.C. § 1325, a misdemeanor, and was sentenced principally to 5 months', 28 days' imprisonment, of which he served 3 months. (D 23, 148).

On or about March 12, 1985, the defendant was arrested and charged in New York with sexual abuse in the third degree.[2] (D 23, 144). It appears a bench warrant was issued for his arrest, and no disposition is reported for the arrest (which does not presently appear on his rap sheet).

On or about August 14, 1987, the defendant applied for temporary residency. (D 135). In the course of that application, the defendant denied under the penalties of perjury that he had ever used the name under which he attempted to enter the country in 1976 (question 4) and or that he had ever been arrested, convicted, or confined in a prison (question 40). (D 132, 134).

On or about May 21, 1990, the defendant applied to adjust his status from a temporary to a permanent resident. (D 122). As part of that application, the defendant denied under the penalty of perjury that he had been arrested since he became a

---

[1] "D" refers to Bates-stamped pages of the discovery produced to defendant at his counsel's request following the Indictment in this case.
[2] "A person is guilty of sexual abuse in the third degree when he or she subjects another person to sexual contact without the latter's consent; except that in any prosecution under this section, it is an affirmative defense that (a) such other person's lack of consent was due solely to incapacity to consent by reason of being less than seventeen years old, and (b) such other person was more than fourteen years old, and (c) the defendant was less than five years older than such other person." N.Y. Penal Law 130.55.

temporary resident alien or that he had ever "procured or . . . attempted to procure a visa or other documentation by fraud, or by willfully misrepresenting a material fact." (D 123-24).

On or about August 10, 1990, the defendant was arrested on charges of sexual abuse in the second degree, in violation of New York Penal Law 130.60,[3] and endangering the welfare of a child, in violation of New York Penal Law 260.10.[4] (D 72). He pleaded guilty to harassment in the first degree, in violation of New York Penal Law 240.25, which at the time was a violation, and he was sentenced to a one-year conditional discharge. (D 72).

On or about August 1, 1993, the defendant was arrested on charges of criminal sexual abuse, in violation of what was then known as Illinois Statute, Chapter 38, ¶ 12-15.[5] (D 79-80). It appears the charges were later dismissed. (D 10).

---

[3] A person is guilty of sexual abuse in the second degree when he or she subjects another person to sexual contact and when such other person is:

    1. Incapable of consent by reason of some factor other than being less than seventeen years old; or

    2. Less than fourteen years old.

    Sexual abuse in the second degree is a class A misdemeanor.

[4] A person is guilty of endangering the welfare of a child when:

    1. He knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old or directs or authorizes such child to engage in an occupation involving a substantial risk of danger to his life or health; or

    2. Being a parent, guardian or other person legally charged with the care or custody of a child less than eighteen years old, he fails or refuses to exercise reasonable diligence in the control of such child to prevent him from becoming an "abused child," a "neglected child," a "juvenile delinquent" or a "person in need of supervision," as those terms are defined in articles ten, three and seven of the family court act.

    Endangering the welfare of a child is a class A misdemeanor.

[5] Criminal sexual abuse, now cited as 720 Ill. Comp. Stat. Ann. 5/12-15, provides that:

    (a) The accused commits criminal sexual abuse if he or she:

In connection with his application for naturalization on or about December 2, 2006, the defendant denied under the penalties of perjury that he had ever (1) used another name, (2) been "arrested, cited or detained by any law enforcement officer . . . for any reason," (3) been charged with any "any crime or offense," (4) been "convicted of a crime or offense," (5) received "a suspended sentence, been placed on probation or been paroled," (6) been incarcerated, or (7) "lied to any U.S. government official to gain entry or admission into the United States." (D 34, 41, 43). Each of those answers was false, according to the Indictment. (Count One.) He reaffirmed all of those false statements, under oath, during his citizenship interview on or about August 14, 2007. (D 25-28, 43; Count Two).

---

    (1) commits an act of sexual conduct by the use of force or threat of force; or

    (2) commits an act of sexual conduct and the accused knew that the victim was unable to understand the nature of the act or was unable to give knowing consent.

(b) The accused commits criminal sexual abuse if the accused was under 17 years of age and commits an act of sexual penetration or sexual conduct with a victim who was at least 9 years of age but under 17 years of age when the act was committed.

(c) The accused commits criminal sexual abuse if he or she commits an act of sexual penetration or sexual conduct with a victim who was at least 13 years of age but under 17 years of age and the accused was less than 5 years older than the victim.

(d) Sentence. Criminal sexual abuse for a violation of subsection (b) or (c) of this Section is a Class A misdemeanor. Criminal sexual abuse for a violation of paragraph (1) or (2) of subsection (a) of this Section is a Class 4 felony. A second or subsequent conviction for a violation of subsection (a) of this Section is a Class 2 felony. For purposes of this Section it is a second or subsequent conviction if the accused has at any time been convicted under this Section or under any similar statute of this State or any other state for any offense involving sexual abuse or sexual assault that is substantially equivalent to or more serious than the sexual abuse prohibited under this Section.

### III. ARGUMENT

A. **Materiality Is Not An Element Of Section 1015(a)**

It is a crime to "knowingly make[] *any* false statement under oath, in any case, proceeding, or matter relating to, or under, or by virtue of any law of the United States relating to naturalization, citizenship, or registry of aliens." 18 U.S.C. § 1015(a) (emphasis added). On its face, the statute does not require the false statement to be "material," and for that reason (among others), every court to have decided the question in the last 50 years (at least that the Government is aware of) has held that materiality is not an element of the offense. *See, e.g., United States* v. *Abuagla*, 336 F.3d 277, 278-79 (4th Cir. 2003); *United States* v. *Tongo*, 16 F.3d 1223, 1994 WL 33967, at *3-*4 (6th Cir. Feb. 7, 1994); *United States* v. *Youssef*, No. CR 06-667-PHX-SMM, 2007 WL 666929, at *1-*2 (D. Ariz. 2007); *United States* v. *Rogers*, 898 F. Supp. 219, 222 & n.5, *as amended* 908 F. Supp. 219, 220 (S.D.N.Y. 1995). *See also United States* v. *Bridges*, 86 F. Supp. 922, 930-31 (D.C. Cal. 1949).[6]

"In interpreting a statute, we start, as always, with the language of the statute," *United States* v. *Reich*, 479 F.3d 179, 187 (2d Cir. 2007) (internal quotation marks and alterations omitted) (declining to imply an element), and this Court should hesitate before adding to such language, because "it is of doubtful wisdom, not to say

---

[6] Although the indictment in *Bridges* alleged that the enumerated misstatements were material, the defendant moved to dismiss on the ground that the statements were immaterial as a matter of law. The District Court resolved the question by holding materiality was not an element. 86 F. Supp. at 930-31. On appeal, the Ninth Circuit had no occasion to decide whether materiality was an element of § 1015(a), because it found the misstatements in question were, in fact, material as a matter of law. *See Bridges* v. *United States*, 199 F.2d 811, 817 n.4, 829 (9th Cir. 1952), *rev'd on other grounds* 346 U.S. 209 (1953). Moreover, the Ninth Circuit had previously held that materiality was not an element of § 1015(a)'s predecessor, 8 U.S.C. § 746(a). *See Prevost* v. *United States*, 149 F.2d 747, 748 (9th Cir. 1945). Accordingly, the Ninth Circuit's decision in *Bridges*, the sole circuit case the defendant cites (Def. Br. at 6-7), does not aid him in establishing that § 1015(a) requires proof of materiality.

potentially dangerous, to import conditions into a penal statute which appear to have been studiously omitted by the lawmakers themselves," *United States* v. *Silver*, 235 F.2d 375, 377 (2d Cir. 1956). *See also United States* v. *Elkin*, 731 F.2d 1005, 1009 (2d Cir. 1984) ("Since the language of [18 U.S.C.] § 287 [criminalizing false claims against the Government] in no way suggests that materiality is an element of the offense, we conclude that proof of materiality was not required."). Where Congress sees fit to punish only material false statements, it says so. *See* 18 U.S.C. § 1546 (punishing the making of "any false statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder" by a maximum of ten years' imprisonment); False Statements Accountability Act of 1996, Pub. L. No. 104-292, § 2, 110 Stat. 3459, 3459 (1996) (amending 18 U.S.C. § 1001 to, *inter alia*, require that false statements punished under the statute be material); *see also* 18 U.S.C. § 1621 (perjury); 18 U.S.C. § 1920 (false statement or fraud to obtain federal employee's compensation); 26 U.S.C. § 7206(1) (declaration under penalty of perjury in any tax return); 42 U.S.C. § 1395ss(d) (false statements with respect to compliance with Medicare requirements); 15 U.S.C. § 78ff(a) (false and misleading statements made in application, report or document required under Securities and Exchange Act of 1934); 29 U.S.C. § 439(b) (false statements in any document, report or other information required under Labor-Management Reporting and Disclosure Act of 1959); 42 U.S.C. § 6928(d) (false statement or representation in any document filed or used in compliance with regulations under Resource Conservation and Recovery Act).

Since § 1015(a) does not "so much as mention materiality," but instead by "its terms cover[s] 'any' false statement," and because "the term 'false statement' carries

no general suggestion of influential significance," under the first criterion in the interpretive hierarchy, a natural reading of the full text, materiality would not be an element of" § 1015(a). *United States* v. *Wells*, 519 U.S. 482, 490 (1997) (citations omitted) (interpreting 18 U.S.C. § 1014).

*Kungys* v. *United States*, relied on by the defendant, is not to the contrary. 485 U.S. 759 (1988). In part, *Kungys* interpreted an immigration statute that equated "giv[ing] false testimony for the purpose of obtaining any benefits" with the lack of good moral character, 8 U.S.C. § 1101(f)(6). The Court held the "natural meaning" of the statute, which lacked any reference to materiality, was dispositive: "On its face, § 1101(f)(6) does not distinguish between material and immaterial misrepresentations. . . . We think it means precisely what it says." 485 U.S. at 779-81.

The *Kungys* Court was also called to address what "material" meant in the context of denaturalization proceedings brought against someone on the ground he or she procured naturalization "by concealment of a material fact or by willful misrepresentation." 8 U.S.C. § 1451(a). Because the statute explicitly included a materiality requirement, the question before the Court was not *whether* the statute was limited to material misstatements, but rather "*what standard* should govern the materiality inquiry" under the statute. *Kungys*, 485 U.S. at 766 (emphasis added).[7] Nowhere did *Kungys* hold, as the defendant argues, that under the common law the phrase "false statement" implies the element of materiality (Def. Br. at 6) — just the opposite is true: "While we do not say that statutory use of the term 'false' or 'falsity' can

---

[7] The fact that a defendant may be prosecuted criminally for immaterial statements under § 1015(a), although a citizen may not be denaturalized for such statements under 8 U.S.C. § 1451(a), is rationally attributable to the different consequences of each statute. *See Rogers*, 898 F. Supp. at 221 n.3; *see also Kungys*, 485 U.S. at 792 (Brennan, J., concurring) ("Denaturalization consequences may be more grave than consequences that flow from conviction for crimes . . . .") (internal quotation marks omitted).

never imply a requirement of materiality, such a requirement is at least not so commonly associated with that term as it is with misrepresentation." 485 U.S. at 781 (interpreting 8 U.S.C. § 1101(f)(6)). In a subsequent case, the Supreme Court explicitly (and over a lone dissent) rejected the argument now advanced by the defendant, that per *Kungys*, a crime of making "false statements" necessarily inheres a common law concept of materiality:

> [T]he passage from *Kungys* quoted by the dissent addressed the historic meaning of the term "material," not the common-law meaning of "misrepresentation" or "false statement." Although *Kungys* supports the view that "materiality" has the same meaning in criminal statutes that prohibit falsehoods to public officials, whether the statutes refer to misrepresentations, or to some form of false statements, that does not mean that "misrepresentation" and "false statement" are identical in carrying an implicit requirement of materiality. Indeed, *Kungys* distinguished between the common-law meaning of "misrepresentation" and "false testimony," concluding that while the former had been held to carry a materiality requirement in many contexts, the terms "false" or "falsity" did not as frequently carry such an implication.

*United States* v. *Wells*, 519 U.S. 482, 491 n.10 (1997) (citations omitted) (rejecting the view that "because 'false statement' is an element of perjury, and perjury criminalizes only material statements, a statute criminalizing 'false statements' covers only material statements"). *Wells* held that the crime of "mak[ing] any false statement or report . . . for the purpose of influencing" various financial institutions, in violation of 18 U.S.C. § 1014, did not require proof of the false statement's materiality. 519 U.S. at 484. Its reasoning and holding applies with equal force here.

The defendant argues that *Wells* is inapplicable because § 1015(a) criminalizes only false statements made "under oath," while § 1014 contains no such limitation. (Def. Br. at 7 n.2). That is no basis for implying a materiality element into § 1015(a), however. As the Supreme Court recognized, the fact that a statute punishes false statements made "under oath" is *less* of a reason for implying materiality, because

that limitation narrows the scope of punishable statements, thereby reducing the likelihood of "draconian results." *Kungys*, 485 U.S. at 780.

The legislative history of § 1015(a) further suggests that Congress did not intend to include the element of materiality in the statute. Section 1015(a) is a recodification of 8 U.S.C. § 746(a)(1), which statute originally included a materiality requirement that Congress eliminated in 1909. *See United States v. Abuagla*, 215 F. Supp. 2d 684, 685 (E.D. Va. 2002). "The most likely inference in these circumstances is that Congress deliberately dropped the term 'materiality' without intending materiality to be an element . . . ." *Wells*, 519 U.S. at 493 (interpreting the analogous legislative history of § 1014). Although the change appears to have been made without remark, "the revisers' failure to mention the omission of materiality as part of the offense does nothing to muddy the ostensibly unambiguous provision of the statute as enacted by Congress." *Wells*, 519 U.S. at 497 (internal quotation marks omitted). *But see United States v. Laut*, 17 F.R.D. 31, 34 & n.4 (S.D.N.Y. 1955).[8] To the extent older cases held the contrary, and imputed a materiality requirement based on ambiguous legislative history instead of the text of the statute, *see Laut*, 17 F.R.D. at 34 & n.4; *United States v. Bressi*, 208 F. 369, 371 (D. Wash. 1913), the difference may be attributed to the era in which those

---

[8]   *Laut* relies for its gloss on the legislative history of § 1015(a) on the "almost contemporaneous construction" of *United States v. Bressi*, which asserts without citation that "the courts have uniformly held [with respect to two of § 746(a)(1)'s predecessors, one which required materiality, and one which did not, that] the testimony must be material." 208 F. 369, 371 (D. Wash. 1913). *Bressi* holds that the language of the statute itself "is immaterial" because of how unspecified courts have ruled in interpreting it, which rulings Congress was presumed to know of, *id.*, but that is simply not the approach to statutory interpretation sanctioned by the Supreme Court in *Wells*, the Second Circuit generally, or the handful of courts to have considered § 1015(a) specifically, *see, e.g., United States v. Abuagla*, 215 F. Supp. 2d 684, 686 (E.D. Va. 2002), which starts and ends, if it can, with the text of the statute, *see Metropolitan Stevedore Co. v. Rambo*, 515 U.S. 291, 294 (1995) ("[W]hen a statute speaks with clarity to an issue, judicial inquiry into the statute's meaning, in all but the most extraordinary circumstances, is finished.")

cases were decided, "a time when a different view of statutory interpretation held sway." *Wells*, 519 U.S. at 509 (Stevens, J., dissenting).[9]

An interpretation of § 1015(a) that omits the materiality element is neither anomalous in the immigration context nor unduly harsh. As discussed above, 8 U.S.C. § 1101(f)(6) punishes (by an adverse character finding) even immaterial "false testimony" for the purpose of obtaining immigration benefits; likewise, 18 U.S.C. § 1542 punishes the making of "any false statement in an application for passport," and materiality is not an element of that crime. *United States* v. *Hart*, 291 F.3d 1084, 1085 (9th Cir. 2002). And it would be perfectly rational for Congress to punish criminally *any* false statements made in the hope of obtaining citizenship, merely because such statements could "obstruct, delay, or deflect an inquiry" by the immigration authorities. *Rogers*, 898 F. Supp. at 220. "It is not an answer to say that the facts thus hidden from view, if revealed, would not necessarily have resulted in the denial of naturalization. It is enough that there is every reason to believe that Congress, in omitting a requirement of materiality . . . sought to punish such behavior and, in consequence, no reason for the courts to limit the statute." *Id.* at 221. Accordingly, because § 1015(a) does not require the Government to prove that the defendant's false statements were material, his motion to dismiss should be denied on that basis.

---

[9] It bears mention that the Second Circuit was the lone circuit to hold that § 1014 did not require proof of materiality, based on the text of the statute, a view that *Wells* vindicated. *Wells*, 519 U.S. 486 n.3.

B.  **A Reasonable Juror Could Conclude That The Defendant's False Statements Were Material**

Even if materiality were an element of § 1015(a), however, the defendant's sworn misstatements in the course of his immigration proceeding were indisputably material, or at least a rational juror could conclude as much. The Government agrees *Kungys* sets forth the appropriate test for materiality, which is "whether the misrepresentation or concealment had a natural tendency to produce the conclusion that the application was qualified" for citizenship. 485 U.S. at 771-72. "It has never been the test of materiality that the misrepresentation or concealment would *more likely than not* have produced an erroneous decision, or even that it would *more likely than not* have triggered an investigation," however. *Id.* at 771. (emphasis original); *see also id.* at 776 (Scalia, J., op.) ("We do not agree with [the] contention that [materiality] requires the Government to establish that naturalization would not have been granted if the misrepresentations or concealments had not occurred."); *United States* v. *An Antique Platter of Gold*, 184 F.3d 131, 135-36 (2d Cir. 1999) ("Under a but for test, lying would be more productive because the government would bear the difficult burden of proving what would have happened if a truthful statement had been made."). Accordingly, the test is *not* whether the defendant was entitled to citizenship, notwithstanding his criminal record; the test is whether his criminal record (and other misstatements), if candidly disclosed to U.S. Citizenship and Immigration Services ("U.S.C.I.S."), would have "had a natural tendency to influence the decisions of" the immigration officer examining the defendant in the first instance, *Kungys*, 485 U.S. at 772, including what questions to ask the defendant about his criminal record, *see* 8 C.F.R. § 335.2(b)-(c), and whether to continue the examination and investigate further, *see* 8 C.F.R. § 335.3(b). Depending on

what information that investigation revealed, the examining officer would then decide whether to deny the application in the first instance, leaving the decision to a hearing before another immigration officer of equal or greater seniority. *See* 8 C.F.R. §§ 316.14, 336.1-336.2; *see also United States* v. *Aladekoba*, No. 02-4499, 2003 WL 1194368, at **1-**2 (4th Cir. 2003) (holding that testimony that "had the INS been aware of a prior arrest for felony drug conspiracy and that Aladekoba misrepresented his first name, [and] that these facts would have been a 'red flag' that would have prevented the grant of naturalization at least until the arrest and falsehoods were satisfactorily explained" "clearly" established materiality); *see also Chaunt* v. *United States*, 364 U.S. 354 (1960) ("An arrest, though by no means probative of any guilt or wrongdoing, is sufficiently significant as an episode in a man's life that it may often be material at least to further enquiry."); *United States* v. *Silver*, 235 F.2d 375, 377 (2d Cir. 1956) ("On the other hand, a fact deliberately or willfully misstated in a matter of appropriate governmental inquiry seems properly punishable even if it is only a gratuitous red herring. As such it can of course obstruct, delay, or deflect an inquiry which is pressing home to uncover fraud upon the government.")

Among the qualifications for citizenship, an applicant must "during all periods referred to in this subsection [have] been and still [be] a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States." 8 U.S.C. § 1427(a). The defendant has on three occasions been arrested for sexual assault under statutes that punish sexual abuse of a minor. The defendant argues that because all of his arrests occurred before the five-year period prior to his application — the period during which

he bears the burden of demonstrating "good moral character" — they can have no relevance to his application for citizenship and are therefore immaterial to it. (Def. Br. at 8-9 & n.4). The statute is clearly to the contrary: "In determining whether the applicant has sustained the burden of establishing good moral character and the other qualifications for citizenship . . . the Attorney General shall not be limited to the applicant's conduct during the five years preceding the filing of the application, but may take into consideration as a basis for such determination the applicant's conduct and acts *at any time prior to that period.*" 8 U.S.C. § 1427(e) (emphasis added). Elsewhere, the statute defines who may not be considered "a person of good moral character," thereby setting a floor that excludes anyone who in the prior five years has been, for example, "a habitual drunkard," "one whose income is derived principally from illegal gambling activities," or has been in prison for six months or more, but the statute is equally clear that the list of disqualifying categories is neither exclusive nor dispositive: "The fact that any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character." 8 U.S.C. § 1101(f). Consistent with this, the implementing regulations provide that the U.S.C.I.S. should "evaluate claims of good moral character on a case-by-case basis taking into account the elements enumerated in this section and the standards of the average citizen in the community of residence," and in so doing:

> *The Service is not limited to reviewing the applicant's conduct during the five years immediately preceding the filing of the application*, but may take into consideration, as a basis for its determination, the applicant's conduct and acts at any time prior to that period, if the conduct of the applicant during the statutory period does not reflect that there has been reform of character from an earlier period or *if the earlier conduct and acts appear relevant to a determination of the applicant's present moral character.*

8 C.F.R. § 316.10(a)(2).[10]

      Whether the defendant presently has the propensities of a child molester could not more clearly be an issue of his moral character, even if the indications of those propensities are dated. *See Nyari* v. *Chertoff*, Civil No. 07-1583 (DWF/AJB), 2008 WL 191303, at *5 (D. Minn. Jan. 18, 2008) (denying petition for naturalization where there was an administrative finding of sexual abuse of a child 15 years before the citizenship application); *United States* v. *Reve*, 241 F. Supp. 2d 470, 477 (D.N.J. 2003) (holding that mere arrests on charges of sexually assaulting a minor were "material" to naturalization application); *United States* v. *Ekpin*, 214 F. Supp. 2d 707, 717 (S.D. Tex. 2002) (holding that "[d]efendant's misrepresentation [on his naturalization application] that his daughter lived with him, when in fact she had been put in the custody of [protective services] and [d]efendant had been ordered to move out of the family home [following her allegations of sexual assault] . . . are material under the *Kungys* standard"). The circumstances of the defendant's prior arrests would naturally be a matter of concern to an immigration officer and an area where further inquiry would be warranted. In fact, the crime for which the

---

[10]     It may be that U.S.C.I.S. could not deny the defendant citizenship *solely* on the basis of arrests outside the five-year period, because it is his "present moral character" that is relevant. *See United States* v. *Hovsepian,* 422 F.3d 883 (9th Cir. 2005). Even assuming for purposes of this motion that that is the law of the Second Circuit, however, the relevant question is whether evidence of the defendant's prior arrests "had a natural tendency to influence the decisions of" U.S.C.I.S., including their decisions on how to evaluate and scrutinize the defendant's application, and whether to conduct further investigation into whether those arrests revealed anything about the defendant's present character, *not* merely the ultimate question of whether to award the defendant citizenship. Accordingly, cases cited by the defendant (Def. Br. at 8 n.4), *Asamoah* v. *INS*, No. 01 Civ. 10847(CBM), 2004 WL 736911 (S.D.N.Y. 2004) and *Rico* v. *INS*, 262 F. Supp. 2d 6 (E.D.N.Y. 2003), are inapposite, because they review *de novo* the immigration authorities' decision on the ultimate question of whether to grant citizenship, *after* the immigration authorities had the opportunity to explore the relevant, underlying facts.
    And having hid information from U.S.C.I.S. that may have led to an investigation, the defendant cannot now complain that the record underlying those incidents and his character has not been developed sufficiently. (Def. Br. at 3 ("Notably, the underlying arrests and convictions do not appear to have been the basis for the denial.")). Once U.S.C.I.S. discovered the defendant's false statements, it was entitled to deny his application without wasting further resources. *See* 8 C.F.R. § 316.10(b)(2)(vi).

defendant was charged in 1993, in Chicago, has been held to be an aggravated felony (even though it is denominated a misdemeanor). *See Guerrero-Perez* v. *INS*, 242 F.3d 727 (7th Cir. 2001). It may be, of course, that the defendant was falsely accused, that he committed acts under the statute that did not involve minors, that the charges otherwise overstated his conduct, or that he has "reform[ed]" his character, 8 C.F.R. § 316.10. It may also be the case, however, that the defendant committed egregious crimes of moral turpitude, but that evidence beyond a reasonable doubt was lacking (perhaps because the victims were unavailable or unwilling to pursue charges). The fact that the defendant was not convicted of those offenses is not dispositive, because it was the defendant's burden to show by a preponderance of the evidence that he was entitled to naturalization, 8 C.F.R. § 316.2, not U.S.C.I.S.'s burden to show that he was ineligible. Instead of confronting that burden squarely and candidly, however, the defendant tried to remove very relevant (and damaging) information from investigation and consideration by the immigration authorities.

*Chaunt* v. *United States* is not to the contrary, for it involved arrests for "distributing handbills, making a speech, and a breach of the peace," which "were not reflections on the character of the man seeking citizenship" and did not "involve moral turpitude." 364 U.S. 350, 353 (1960). "Had they involved moral turpitude . . . , *had they involved conduct which even peripherally touched types of activity which might disqualify one from citizenship*, a different case would be presented." *Id.* at 354 (emphasis added).

If there remains any question as to materiality, however, it is one for a jury to resolve, because "in order to decide whether the statements had a natural tendency to

influence, or [be] capable of influencing, the decision of" U.S.C.I.S., a fact-finder would need to "make factual determinations as to what statement was made and what decision . . . the agency [was] trying to make." *United States* v. *Klausner*, 80 F.3d 55, 61 (2d Cir. 1996); s*ee United States* v. *Gaudin*, 515 U.S. 506, 522-23 (1995) (holding that materiality in a prosecution under 18 U.S.C. § 1001 is a matter for the jury to decide and rejecting *dicta* in *Kungys* to the contrary); *United States* v. *Ballistrea*, 101 F.3d 827, 834 & n.4 (2d Cir. 1996). And because materiality is a jury question, trial, not motion practice, is the proper forum to test the materiality of the defendant's false statements. *See United States* v. *Guttenberg*, No. 07 Cr. 141 (DAB), 2007 WL 4115810, at *3 (S.D.N.Y. Nov. 14, 2007); *United States* v. *Ashley,* 905 F. Supp. 1146, 1162 (E.D.N.Y. 1995).

### III. CONCLUSION

Accordingly, for the reasons stated above, the Court should deny the Defendant's motion.

February 8, 2008

                                        Respectfully submitted,

                                        MICHAEL J. GARCIA
                                        United States Attorney
                                        Southern District of New York

By:    _____
       Adam S. Hickey
       Assistant United States Attorney
       (212) 637-1039