UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
UNITED STATES OF AMERICA   :
                                           :
              v.                :   07 Cr. 776 (RJH)
                                           :
JOSE TERRAZAS,               :
                                           :
                   Defendant.   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
<u>DEFENDANT'S MOTION TO DISMISS</u>**

## Table of Contents

|   |   | Page |
|---|---|---|
| 1. | The Government Errs in Suggesting That Courts May Not Read Materiality Into Statutes. | 2 |
| 2. | The Government Fails Persuasively To Distinguish *Laut* and *Bressi* | 3 |
| 3. | The Government Incorrectly Relies on *Wells*. | 5 |
| 4. | The Government Misinterprets *Kungys* and Overlooks Language Clearly Applicable to Section 1015(a). | 8 |
| 5. | The Government Cites To Non-Controlling, Unpublished, and/or Un-Supportive Cases To Support its Argument That Materiality Is Not an Element. | 10 |
| 6. | Immigration Officials May Not Consider Conduct Occurring Prior to the Five-Year Period. | 12 |
| CONCLUSION | | 16 |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
UNITED STATES OF AMERICA            :
                                    :
            v.                      :
                                    :   07 Cr. 776 (RJH)
JOSE TERRAZAS,                      :
                                    :
            Defendant.              :
                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

### REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Defendant Jose Terrazas respectfully submits this Reply Memorandum of Law in further support of his Motion to Dismiss the Indictment, pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure.

Terrazas' motion to dismiss presents two pure questions of law: (1) whether materiality is an element of 18 U.S.C. § 1015(a) and (2) whether immigration officials are permitted to consider conduct occurring more than five years before a naturalization application where an applicant has exhibited no conduct reflecting negatively on his good moral character during that five-year period. Notwithstanding that the issues presented are purely legal ones, the government makes repeated inflammatory statements about Terrazas, even going so far as to label him a "child molester." (Gov't Br. 1, 14.) It does so, even though it is undisputed that Terrazas' criminal history consists solely of a 30-year-old immigration *misdemeanor*, and a 20-year-old *violation*.

A dispassionate review of the law reveals six separate flaws in the government's argument. We address each below.

1.  The Government Errs in Suggesting That Courts May Not Read Materiality Into Statutes.

The government suggests that because of deference due to Congressional intent, courts are not permitted to imply the element of materiality into statutes like Section 1015(a). (Gov't Br. 5-6.) That is plainly wrong. Courts have regularly read materiality into statutes that are similar in nature to Section 1015(a), including the following:

- The Second Circuit read materiality into a predecessor version of 18 U.S.C. § 1001, which criminalizes the making of false statements within the jurisdiction of a federal agency. *United States* v. *Ali*, 68 F.3d 1468 (2d Cir. 1995) (implying element of materiality to prongs of statute criminalizing making of false statements and use of false documents, even though "material" appeared only in "concealment" prong of the statute).[1]

- Courts have read materiality into 18 U.S.C. § 1425(a), which criminalizes the "knowing[] procure[ment] or attempt[] to procure, contrary to law, the naturalization of any person, or documentary or other evidence of naturalization or of citizenship." *See United States* v. *Puerta*, 433 F.3d 1148

---

[1] Importantly, courts have noted the strong similarities between Sections 1015 and 1001, further supporting the propriety of implying a materiality element into Section 1015. *See United States* v. *Rogers*, 898 F. Supp. 219, 222 (S.D.N.Y. 1995) ("Section 1015(a) is virtually identical to 18 U.S.C. § 1001").

(2006) (reasoning that "contrary to law" means contrary to the immigration laws and looking to 18 U.S.C. § 1451(a), the denaturalization statute, in holding that the immigration laws include an element of materiality).

- The Second Circuit has read a materiality element into 18 U.S.C. § 542, which criminalizes the making of false statements on customs forms. *United States* v. *An Antique Gold Platter*, 184 F.3d 131 (2d Cir. 1999); *United States* v. *Avelino*, 967 F. 2d 815, 817 (2d Cir. 1992) ("[F]alse statements under Section 542 are necessarily material because the importation must be 'by means of [the] false statement.'")[2]

- The Supreme Court has read a materiality element into 18 U.S.C. §§ 1341, 1343, and 1344, the federal mail, wire, and bank fraud statutes. *Neder* v. *United States*, 527 U.S. 1, 20 (1999) ("fraud" includes element of materiality based on common law antecedents).

In view of these precedents, it is plain that a court would not exceed its proper authority were it to imply the element of materiality into a criminal statute such as Section 1015(a).

2.     The Government Fails Persuasively To Distinguish *Laut* and *Bressi*.

Both *United States* v. *Laut*, 17 F.R.D. 31 (S.D.N.Y. 1955), and *United States* v. *Bressi*, 208 F. 369 (W.D. Wash. 1913), held that materiality is an implied

---

[2]   It is important to note that Section 542 criminalizes "*any* false statement" on customs forms. 18 U.S.C. § 542 (emphasis added). Therefore, the government's contention that the term "any" in Section 1015(a) necessarily includes non-material statements is incorrect. (Gov't Br. 7.)

element of Section 1015(a). The government's efforts to distinguish these on-point precedents fall short.

The government's primary contention is that the Court should simply ignore *Laut* and *Bressi* because their age makes them of questionable continuing validity. It even relegated discussion of these cases to a footnote. (Gov't Br. 9 n.8.) Yet as recently as 1988, these cases were cited as authority in a United States Supreme Court opinion. *See Kungys* v. *United States*, 485 U.S. 759, 798 n.9 (1988) (concurring opinion) ("Courts have construed [1015(a)] to contain a requirement that the false statement be material.") (citing *Laut*, 17 F.R.D. at 31 and *Bressi*, 208 F. at 369).

Moreover, contrary to the government's suggestion, *Laut* and *Bressi* are not alone in reading a materiality element into Section 1015(a) or its predecessor statutes. Numerous courts, administrative tribunals, and the United States Department of State have either reached the same conclusion, or suggested as much. *See, e.g.*, *United States* v. *Rogers*, 104 F.3d 355 (2d Cir. 1996) (unpublished table decision) ("assuming *arguendo* that 'materiality' is an element of [1015(a)]."); *Bridges* v. *United States*, 199 F.2d 811 (9th Cir. 1952), *rev'd on other grounds*, 346 U.S. 209 (1953) (assuming for purposes of argument that materiality is an implied element of 1015(a)); *United States* v. *Udani*, 141 F. Supp. 30 (S.D. Cal. 1956) (assuming materiality is an element of 1015(a)); *Matter of K*, 3 I & N 69, 72 n. a1 (BIA 1947) (editors note) ("[A] violation of [1015(a)]

has been held to involve moral turpitude")[3] (citing *Matter of O*, 5326517 (BIA Mar. 28, 1945) (indicating State Department view that Section 1015(a) is a crime involving moral turpitude); *In the Matter of S*, A-5659971 (BIA June 6, 1947) ("This Board has taken the position that a violation of [Section 1015(a)] involves moral turpitude."); *Matter of B*, A-3795206 (BIA Apr. 25, 1947) (same)).

In view of the foregoing, the Court should decline the government's invitation to simply ignore *Laut* and *Bressi*. They remain good law and support the conclusion Terrazas advances here.

3. <u>The Government Incorrectly Relies on *Wells*</u>.

The government places substantial reliance on *United States* v. *Wells*, 519 U.S. 482, 490 (1997), in which the Supreme Court held there is no implied element of materiality in 18 U.S.C. § 1014. (Gov't Br. 8-9). Despite their proximity in the United States Code, however, Section 1014 (which criminalizes false statements made in connection with applications for crop insurance) and Section 1015(a) have little in common.

As the Court explained in *Wells*, Section 1014 merely criminalizes making "false statements." Standing alone, that offense has no common law antecedent similar to perjury. *Id.* at 491. In contrast, Section 1015(a) criminalizes making "false statements

---

[3] For a false statement to be turpitudinous, it must be material. *See Jordan* v. *DeGeorge*, 341 US 223 (1951) ("[W]here fraud is an element, the crime involves moral turpitude."); *Matter of B*, 6 I & N 806 (BIA 1955) (defining fraud as a material false statement); *see Matter of G-*, 8 I & N 315 (BIA 1959) (holding that crime was not turpitudinous where materiality was not an element of the crime); *Matter of S-*, 2 I & N 353, 359 (BIA 1945) (same).

*under oath*." The "under oath" requirement invokes the common law antecedent of perjury, under which proof of materiality has always been required. *See Kungys* v. *United States*, 485 U.S. 759, 769-70 (1988).

What is more, violations of Section 1015(a) have historically been characterized as immigration *fraud*.[4] In *Neder*, the Supreme Court implied materiality into the federal mail fraud statute because "the well-settled, common-law meaning of 'fraud' required a misrepresentation or concealment of material fact" at the time of the mail fraud statute's original enactment in 1872. 527 U.S. at 21 ("[T]he common law could not have conceived of 'fraud' without proof of materiality.") Section 1015(a), which also sounds in fraud, should similarly include an element of materiality.

The government's reliance on *Wells* is also misplaced because, as the Court explained, its decision not to imply an element of materiality there was based in part on the unique legislative history of Section 1014. In enacting Section 1014, Congress "simply consolidated 13 statutory provisions relating to financial institutions . . . . 3 of the 13 had contained express materiality requirements and lost them in the course of consolidation." *Wells*, 519 U.S. at 491-93.

The legislative history of Section 1015(a) is, of course, quite different. The 1909 amendments to the 1906 version of the predecessor statute to Section 1015(a) omitted "material" from the statute, but not as part of a purposeful effort to dispose of the

---

[4] The 1870 statute characterized falsity in connection with naturalization as fraud. Rev. Stat., ch. CCLIV, sec. 3 (1870). And the 1906 version of Section 1015(a), referred to the statute as "Punishment for *fraudulently* obtaining naturalization." 34 Stat. 603, ch. 3592, sec. 23 (1906) (emphasis added).

longstanding materiality requirement. A thorough review of the legislative history suggests the exclusion to have been more likely a mere oversight. Congress has variously added "material" to, or deleted it from, the statute without discussion, likely because it assumed other terms in the statute naturally embraced the element of materiality. Importantly, court decisions following the 1909 amendments continued to read a materiality element into the statute. Most significantly, *Bressi* rejected the very same argument the government makes here: that the 1909 reenactment manifested an explicit Congressional intent to remove the element of materiality. (Gov't Br. 9.) In reaching this conclusion, *Bressi* held, "[I]n view of the fact that courts have uniformly held, in considering [the 1870 version of the statute] and [the relevant provision] of the 1906 act, that the testimony must be material," the 1909 version should also be construed to require materiality.[5] *Id.* at 370-71.

        Significantly, this construction in *Bressi* has *never* been modified by Congress in its subsequent codifications of the statute, a failure that "bespeaks Congressional approval of its view." *United States* v. *Laut*, 17 F.R.D. 31, 34 n.4 (S.D.N.Y. 1955) (citing *Apex Hoisery Co.* v. *Leader*, 310 U.S. 469, 488 (1939)); *see also Hamdan* v. *Rumsfeld*, 126 S.Ct. 2749, 2766 n.7 (2006) ("Congress had been put on notice

---

[5] The government attacks *Bressi* for failing to cite to precedent holding materiality to be an element of the statute. (Gov't Br. 9 n. 8.) But contrary to the government's assertion, *Bressi* was not the first decision to reach the conclusion that materiality is an element of Seciton 1015(a)'s predecessor statute. *See United States* v. *Grottkau*, 30 F. 672, 674 (E.D. Wis. 1887) (implying materiality in Section 5395, the 1870 version of Section 1015(a), because "[t]his being the statutory provision as enacted by Congress, we have to apply to the case, the familiar and elementary principle that, to constitute perjury, the oath or affirmation must be material").

by prior lower court cases addressing the Tucker Act that it ought to specifically reserve jurisdiction over pending cases.") (citing *Bruner* v. *United States*, 343 U.S. 112, 115 (1952)).

Therefore, "under the rule that Congress intends to incorporate the well-settled meaning of the common-law terms it uses, [it]cannot [be] infer[red] from the absence of an express reference to materiality that Congress intended to drop that element." *Laut*, 17 F.R.D. at 22-23. Indeed, a court should "of course, presume that Congress incorporates the common-law meaning of the terms it uses," *Wells*, 519 U.S. at 491 (citing *Nationwide Mut. Ins. Co.* v. *Darden*, 503 U.S. 318, 322 (1992)) (internal quotations omitted), and a materiality element should therefore be implied into Section 1015(a).

4.  The Government Misinterprets *Kungys* and Overlooks Language Clearly Applicable to Section 1015(a).

The government contends that *Kungys* does not support a reading of materiality into Section 1015(a) because the Court there declined to read materiality into 8 U.S.C. § 1101(f)(6). (Gov't Br. 7.) But in reaching that conclusion, the *Kungys* Court specifically distinguished Section 1101(f)(6) from statutes similar to Section 1015(a), noting, "The absence of a materiality requirement in § 1101(f)(6) can be explained by the fact that its primary purpose is not (like § 1451(a)) [and Section 10 of the Displaced Persons Act of 1948 ("DPA")], to prevent false pertinent data from being introduced into

the naturalization process."[6]  "Section 1101(f)(6) . . . is part of a definition of what constitutes a lack of 'good moral character' for purposes of qualifying for immigration. *Id.* at 781-82.  Like 1451(a) and Section 10 of the DPA – and unlike Section 1101(f)(6) – Section 1015(a) is not a definitional provision, but rather a punitive one, the sole purpose of which is to punish the introduction of materially false information into the naturalization process.

In contrast to Section 1101(f)(6), requiring the government to prove materiality to establish a violation of Section 1015(a) is consistent with the more serious consequences that result from conviction of this offense.  Section 1101(f)(6) is a civil provision, the violation of which neither results in imprisonment, nor bars a person from subsequently seeking naturalization; the violator is merely prevented from establishing good moral character for five years.  By contrast, Section 1015(a), not only carries criminal sanctions, but also may result in deportation and a permanent bar from naturalization.  Requiring proof of materiality to establish a violation of Section 1015(a) protects a criminal defendant from conviction or deportation based on what might amount to purely trivial false statements.  *See Laut*, 17 F.R.D. at 34.  ("Enacting Section 1015(a) Congress aimed, not at such trivia, but rather false at testimony likely to mislead immigration. . . . officials in the conduct of their appointed tasks.").

---

[6]  Section 1451(a) provides for denaturalization of a person who has made material false statements in a naturalization application, and Section 10 of the DPA permanently bars a person who has lied about being a displaced person to gain entry to the United States from ever entering the country again.

The government misreads *Kungys* when it asserts that the inclusion of the "under oath" requirement in Section 1015(a) provides "*less* of a reason for implying materiality." (Gov't Br. 8-9.) In *Kungys*, the Court noted that several factors specific to 8 U.S.C. § 1101(f)(6), including that the statute "is limited to *oral* statements made under oath," weighed in favor of *not* implying materiality into that statute. *Id.* at 780-81 (emphasis added). *Kungys* explained that at common law, false statements made under oath to public officials − exactly the type of conduct criminalized by Section 1015(a) − typically included a materiality element.[7] *Id.* at 769-70. "Given these common-law antecedents," the court found it "unsurprising" that various courts had construed 18 U.S.C. § 1001 to include an implied element of materiality. *Id.* (citing *Gonzalez* v. *United States*, 286 F.2d 118, 122 (10th Cir. 1960) (implying materiality element into old version of Section 1001)). The same conclusion is warranted with respect to Section 1015(a).

5.  The Government Cites To Non-Controlling, Unpublished, and/or Un-Supportive Cases To Support its Argument That Materiality Is Not an Element.

To support its position that materiality is not an element of Section 1015(a), the government cites five cases: one case from the Fourth Circuit that incorrectly applied Supreme Court precedent, two unreported cases with similar flawed reasoning, and two cases that actually are more supportive of Terrazas' position. (Gov't Br. 5).

---

[7]  Section 1015(a) has historically been characterized as a perjury statute. The 1870 version of the statute states that to "knowingly swear or affirm falsely" in a naturalization proceeding "shall be deemed to and taken to be perjury." Rev. Stat., ch. CCLIV (1870). The next version of 1015(a), Section 5395, enacted in 1878, grouped Section 5395 with the perjury statutes. 1 Rev. State., ch. 4, sec. 5395 (1878).

The first case, *United States* v. *Abuagla*, 336 F.3d 277 (4th Cir. 2003), incorrectly relies on *Wells* and completely overlooks the cases cited above in which materiality has been read into statutes that are more like 1015(a) than Section 1014 (the statute at issue in *Wells*). In addition, instead of looking to the legislative history and common law antecedents relevant to Section 1015(a), *Abuagla* wrongly parroted what *Wells* said with respect to Section 1014. *Id.* at 278-79. But as explained above, Section 1015(a) is very different in content, character, and history from Section 1014.

Two other cases the government cites, both unreported, are based on reasoning as flawed as that of *Abuagla*. *See United States* v. *Tongo*, 16 F.3d 1223 (6th Cir. Feb. 14, 1994) (unpublished table decision) (overlooking, *inter alia,* the vast case law reading materiality into statutes similar to Section 1015(a)) and *United States* v. *Youssef*, No. 66 Cr. 667, 2007 WL 666929 (D. Ariz. 2007) (same).

The final two cases cited by the government actually support Terrazas' position. In *United States* v. *Rogers*, 898 F. Supp. 219 (S.D.N.Y 1995), the district court held that Section 1015(a) does not contain an implied materiality element, reasoning that "Section 1015(a) is virtually identical to 18 U.S.C. § 1001," and noting that the "Second Circuit [has] repeated[ly] h[eld] that materiality is not an element of the false statement offense under 18 U.S.C. § 1001." *Id.* at 222 & n. 5. But that reasoning no longer holds true: after *Rogers* was decided, the Second Circuit reversed itself and held that Section 1001 *does* contain an implied element of materiality. *United States* v. *Ali*, 68 F.3d 1468,

1474-75 (2d Cir. 1995).[8]  While the original premise for which the government cited *Rogers* no longer stands, the court's observation that Sections 1015(a) and 1001 are "nearly identical," 898 F. Supp. at 222, supports what Terrazas contends here: that materiality is an element of Section 1015(a).

Finally, *Bridges* also supports reading materiality into Section 1015(a). In *Bridges*, the Ninth Circuit assumed without discussion that materiality is an element of Section 746(a)(1), the predecessor statute to Section 1015(a). *Bridges* v. *United States*, 199 F.2d 811, 829 (9th Cir. 1952). The government's assertion that the Ninth Circuit had decided prior to *Bridges* that materiality was not an element of the statute is wrong. (Gov't Br. 5 note 6.) The case cited by the government interprets Section 746(a)(18), which criminalizes false claims of citizenship. *See Prevost* v. *United States*, 149 F.2d 747 (9th Cir. 1945). Section 746(a)(18) is not a predecessor to Section 1015(a), but rather to 18 U.S.C. § 911, which criminalizes false claims of citizenship and, notably, contains no requirement that such false claims be made under oath or to a public official.

6.  Immigration Officials May Not Consider Conduct Occurring Prior to the Five-Year Period.

The Supreme Court has confirmed that "[a] provision of the Immigration and Nationality Act requires that an alien who applies for naturalization as a United States citizen must establish that during the five years preceding the filing of his petition

---

[8] Following *Ali*, the district court in *Roberts* filed an amended decision that avoided the question of whether materiality is an element of Section 1015(a), as did the Second Circuit when it considered the case again on appeal. *Rogers*, 908 F. Supp. 219, 220 (S.D.N.Y. 1995); *Rogers*, 104 F.3d 355 (2d Cir. 1996).

he has been 'a person of good moral character." *Berenyi* v. *District Director*, 385 U.S. 630, 631-32 (1967). Notwithstanding this ruling – and repeated references in statute and regulation to the need to establish good moral character during the *five years* preceding an application – the government argues mightily that *any* criminal conduct, regardless of age, can be deemed material to the naturalization decision. (Gov't Br. 11-16). The law does not support that contention.

Immigration officials may look beyond the five years preceding a naturalization application when conduct occuring during the five-year period suggests the applicant has not since reformed himself, *i.e.,* there must be some recent negative conduct, either discovered through further investigation of past conduct or that suggests the past conduct remains relevant. For example, in *Tieri* v. *INS*, 457 F. 2d 391 (2d Cir. 1972), immigration officials began an investigation into an applicant after he disclosed arrests prior to the five-year period, discovering that the petitioner, *during the 5-year period*, had participated in a "pattern of untruth and evasion" and had "persistently attempted to obscure" his past conduct. *Id.* at 393. Because there was a nexus between the past and present conduct, the petition was properly denied.

In contrast to *Tieri*, there is no evidence that investigation into Terrazas' prior criminal history would have revealed conduct reflecting negatively on his good moral character during the five years preceding his naturalization application. Terrazas' most recent arrest was in 1993, almost *15 years* ago, and resulted in a *Class Z citation* that appears to have been dismissed. Had Terrazas' limited criminal history been disclosed, it would have revealed nothing about his recent behavior and formed no basis for a denial of his application.

Congress has specified only two classes of serious crimes – murder and aggravated felonies – that, regardless of age, bar an applicant from establishing good moral character. *See* 8 U.S.C. §§ 1101(f)(8) and (9). In view of this explicit legislative judgment, it makes little sense to suggest that Congress nevertheless intended that *any* crime – regardless of its severity or age – be a potential bar to establishing good moral character during the applicable period preceding a naturalization application. *Cf. Marquez-Almanzar* v. *I.N.S.*, 418 F.3d 210, 215 (2d Cir. 2005) (upholding denial of naturalization where applicant was convicted of a drug crime, an aggravated felony); *Boatswain* v. *Gonzales*, 414 F.3d 413, 418 (2d Cir. 2005) (noting that "the various provisions of chapter twelve attach different chronological conditions to the good moral character requirement contained in each" and upholding denial of naturalization based on aggravated felony conviction).[9]

It is for this reason that in *United States* v. *Profaci*, 274 F.2d 289 (2d. Cir. 1960), the Second Circuit held, "Since good moral character during the prescribed five year period in this country was the sole test of good moral character, and naturalization could not be denied on account of arrests prior to the five years of residence in the United States, it could honestly have been thought that the examiner was not interested in earlier, foreign, arrests." *Id.* at 292 (citations omitted). *See also Matter of K*, 3 I & N 180, 182 (BIA 1949) (finding that the alien was eligible for naturalization because "the alien has

---

[9] *Boastswain* does contain some sweeping statements about the naturalization review not being limited to the five-year period. Given that the court's holding cites specifically to the aggravated felony subsection, Section 1101(f)(8), those statements must be considered *dicta*.

been of good moral character for the preceding 5 years"); *Del Guerico* v. *Pupko*, 160 F.2d 799 (9th Cir. 1947), (deciding naturalization application based on arrests that took place within the five-year period); *In re Zunker*, 283 F. Supp. 793 (S.D.N.Y. 1968) (holding that adulterous relationship during the five years immediately preceding naturalization petition barred a finding of good moral character). The government cites no controlling case law to the contrary.

The government also attempts to distinguish *Chaunt* v. *United States*, 364 U.S. 350 (1960), in which the Supreme Court held immaterial a naturalization applicant's false statements about his criminal history, reasoning that Chaunt was convicted for only minor crimes of "distributing handbills, making a speech, and breach of the peace." (Gov't Br. 15.) But it cannot be seriously disputed that Terrazas' criminal history consists of similarly minor offenses, a Class B Misdemeanor and a Violation. And, of course, those offenses are 30 and 20 years old, respectively.

Because there is no evidence that Terrazas has engaged in any conduct that would reflect negatively on his good moral character during the five-year period preceding his naturalization application, immigration officials would not have been permitted to consider his aged criminal record in determining whether he met the good moral character standard for naturalization. Consequently, any false statements about his prior criminal record could not have been material to a reasonable immigration official in deciding whether to grant his petition. Accordingly, the government cannot, as a matter of law, establish the essential element of materiality, and the indictment should be dismissed.

## **CONCLUSION**

The Fifth and Sixth Amendments to the United States Constitution "require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *United States v. Gaudin*, 515 U.S. 506, 510 (1995). For the reasons set forth above, the government is required to prove that any alleged false statements by Terrazas were materially false. As a matter of law, it cannot sustain that burden. The Indictment should therefore be dismissed.

Dated:  New York, New York
        February 15, 2008

                                        Respectfully submitted,

                                          /s/
                                        _____
                                        Steven R. Peikin (SP 0246)
                                        Amy E. Howlett (AH 9112)
                                        125 Broad Street
                                        New York, New York 10004
                                        (212) 558-4000
                                        Attorneys for Defendant