UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                                       :

UNITED STATES OF AMERICA,        :

                                                       :        07 Cr. 776 (RJH)

-against-        :

                                                       :        **MEMORANDUM OPINION**

JOSE TERRAZAS,        :        **AND ORDER**

                                                       :

                    Defendant.        :

                                                       :
------------------------------------------------------------x

Defendant Jose Terrazas ("Defendant") has been indicted and charged with making false statements in a 2006 application for naturalization and during his citizenship interview in violation of 18 U.S.C. § 1015(a). According to the indictment, Defendant falsely represented, *inter alia*, that he had never been arrested or convicted of a crime when, in fact, he had been arrested on four occasions between 1976 and 1993, these arrests leading to two convictions.[1]

Under 18 U.S.C. § 1015(a), "[w]hoever knowingly makes any false statement under oath, in any case, proceeding, or matter relating to, or under, or by virtue of any

---

[1] There is some dispute as to the details of Defendant's criminal record. The parties agree that Defendant was arrested in 1976 for attempting to enter the United States using counterfeit documents and a false name and later convicted of a violation of 18 U.S.C. § 1325(a). (Def.'s Br. 2–3; Opp'n 2.) Defendant was sentenced to five months and twenty-eight days imprisonment and served three months of this sentence. (Def.'sBr. 3; Opp'n 2.) The parties further agree that Defendant was arrested in 1985. (Def.'s Br. 3.) According to the government, Defendant was charged with a violation of New York Penal Law § 130.55, "sexual abuse in the third degree." (Opp'n 2.) The parties agree that Defendant was again arrested in 1990. (Def.'s Br. 3; Opp'n 3.) According to the government, Defendant was charged with violations of New York Penal Law § 130.60, "sexual abuse in the second degree" and New York Penal Law § 260.10, "endangering the welfare of a child." (Opp'n 3.) Defendant contends that his 1985 and 1990 arrests were "combined" (Def.'s Br. 3), while the government contends that no disposition was reported relating to Defendant's 1985 arrest (Opp'n 2). The parties agree, however, that Defendant was ultimately convicted of a violation of New York Penal Law § 240.25, which Defendant characterizes as "second degree harassment" and which the government characterizes as "harassment in the first degree," and was sentenced to a one-year conditional discharge. (Def.'s Br. 3; Opp'n 3.) Finally, the parties agree that Defendant was arrested in 1993 and charged with violation of an Illinois statute, which Defendant characterizes as "sexual abuse/force" and which the government characterizes as "criminal sexual abuse." (Def.'s Br. 3; Opp'n 3.) The parties agree that these charges were later dismissed. (Def.'s Br. 3; Opp'n 3.)

law of the United States relating to naturalization, citizenship, or registry of aliens . . . [s]hall be fined under this title or imprisoned not more than five years, or both."

Defendant argues that the indictment must be dismissed because the government cannot establish an essential element of the offense. According to Defendant, materiality is an element of a § 1015(a) violation and the false statements Defendant is alleged to have made are, as a matter of law, immaterial. The government contends that § 1015(a) does not include a materiality requirement and that the statements at issue are, in any case, material.

The Court concludes that 18 U.S.C. § 1015(a) does not require a showing of materiality; as a consequence, the Court does not consider the materiality of the false statements with which Defendant is charged.

## ANALYSIS

The "first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997); *see also United States v. Wells*, 519 U.S. 482, 490 (1997) (stating that "the first criterion in the interpretative hierarchy" is "a natural reading of the full text"). If the "statutory language is unambiguous and 'the statutory scheme is coherent and consistent,'" no further inquiry is required. *Robinson*, 519 U.S. at 340 (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240 (1989)). The language of § 1015(a) is unambiguous. It applies to "any false statement under oath," without reference to the materiality of that statement. *See United States v. Abuagla*, 336 F.3d 277, 278–79 (4th Cir. 2003) ("Nowhere does [§ 1015(a)] further say that a material fact must be the subject of the false statement or so

2

much as mention materiality." (internal quotation marks omitted)); *United States v. Tongo*, No. 93-5326, 1994 WL 33967, at *4 (6th Cir. Feb. 7, 1994) ("A plain reading of [§ 1015(a)] . . . similarly leaves no room for error . . . . There is no reference in the statutory text to materiality."); *United States v. Rogers*, 898 F. Supp. 219, 220, 222 n.5 (S.D.N.Y. 1995) (noting that 18 U.S.C. § 1425(a) "does not contain an express requirement of materiality" and that materiality is not an element of 18 U.S.C. § 1425(a) or 18 U.S.C. § 1015(a) for the same reasons); *United States v. Youssef*, No. CR 06-667, 2007 WL 666929, at *1 (D. Ariz. Feb. 28, 2007) ("The statute does not state that a material fact must be the subject of the false statement; rather, it clearly states that any false statement made under oath in a naturalization proceeding is prohibited."); *United States v. Bridges*, 86 F. Supp. 922 (N.D. Cal. 1949) ("The Section in question, upon which the prosecution is in particular grounded, Section 1015(a) . . . makes no reference to "materiality.").

The Supreme Court recently reached a similar conclusion with respect to 18 U.S.C. § 1014, which provides criminal penalties for "knowingly mak[ing] any false statement or report . . . for the purpose of influencing in any way the action" of a Federal Deposit Insurance Corporation ("FDIC") insured bank. *See Wells*, 519 U.S. at 490. In finding that a "natural reading" of this language indicated no materiality requirement, the Court noted,

> Nowhere does it further say that a material fact must be the subject of the false statement or so much as mention materiality. To the contrary, its terms cover "any" false statement that meets the other requirements in the statute, and the term "false statement" carries no general suggestion of influential significance.

*Id.*

3

It is presumed that "Congress incorporates the common-law meaning of the terms it uses if those 'terms . . . have accumulated settled meaning under . . . the common law' and 'the statute does not otherwise dictate.'" *Id.* at 491; *see also Kungys v. United States*, 485 U.S. 759, 770 (1988) ("When Congress uses terms that have accumulated settled meaning under either equity or the common law, a court may infer . . . that Congress meant to incorporate the established meaning of the terms."). In *Wells*, the Court held that the statutory language "false statement" in § 1014 did not include an "implication of materiality" simply because other common law crimes involving false statements, like perjury, required materiality. *Wells*, 519 U.S. at 491. Similarly, in *Kungys*, the Court found that the statutory language "give[] false testimony" in 8 U.S.C. § 1101(f) did not include an implied element of materiality, distinguishing this phrase from "misrepresentation," which was also the name of a common law tort that required materiality. *Kungys*, 485 U.S. at 781.

Defendant attempts to distinguish § 1015(a) from the statutes at issue in *Wells* and *Kungys* on the grounds that § 1015(a) applies not to "false statement[s]" or "false testimony" but to "false statement[s] *under oath*." (Def.'s Br. 7 n.2; Reply 5–6 (emphasis added by Defendant).) Defendant argues that because, at common law, a false statement under oath to a public official was considered perjury, the Court should infer that Congress, by using the phrase "false statement under oath" in § 1015(a), intended to incorporate the materiality requirement of common law perjury. (Def.'s Br. 6.) Defendant cites no support for the proposition that the phrase "false statement under oath" has any "common law antecedent" or "established meaning" that includes a materiality element. (*Id.*

4

(quoting *Kungys*, 485 U.S. at 769, 770).)  Indeed, the premise of Defendant's argument was squarely rejected by the Supreme Court in *Wells*:

> [W]e disagree with [the] . . . view that any term that is an element of a common-law crime carries with it every other aspect of that common-law crime . . . .  It is impossible to believe that Congress intended to impose such restrictions *sub silentio*, however, and so our rule on imputing common-law meaning to statutory terms does not sweep so broadly.

519 U.S. at 491 n.10.

Defendant also argues that § 1015(a) requires materiality because courts have read an implied materiality element into similar statutes.  (Reply 2–3.)  However, all of these statutes are distinguishable.  For example, 18 U.S.C. § 542 prohibits the introduction into the United States of imported merchandise "by means of any . . . false statement."  Materiality is an element of a § 542 violation, not because the term "false statement" implies materiality, but because the statute only prohibits false statements that are the "means" by which merchandise is imported into the country.  *See United States v. Avelino*, 967 F.2d 815, 817 (2d Cir. 1992) ("[F]alse statements under Section 542 are necessarily material because the importation must be 'by means of [the] false statement.'").  Likewise 18 U.S.C. §§ 1341, 1343, and 1344, the mail, wire, and bank fraud statutes, each prohibits a "scheme or artifice to defraud."  The Supreme Court has held that these include an implied materiality requirement based on the "well-settled meaning of 'fraud,'" which "require[s] a misrepresentation or concealment of material fact."  *Neder v. United States*, 527 U.S. 1, 20–23 (1999).  Finally, 18 U.S.C. § 1425(a) provides criminal penalties for "knowingly procur[ing] or attempt[ing] to procure, contrary to law, the naturalization of any person . . . ."  The Ninth Circuit has held that this statute includes a materiality element.  *United States v. Alferahin*, 433 F.3d 1148, 1155–56 (9th Cir. 2006).  In doing so, the court specifically distinguished 18 U.S.C.

5

§ 1014, the statute at issue in *Wells*, which does not require materiality, on the grounds that § 1014, like § 1015, was directed at "false statements," not statements "contrary to law." *Id.*[2]

There are a number of modern cases holding, consistent with the result reached by this Court, that § 1015(a) includes no materiality requirement. *See, e.g., Abuagla*, 336 F.3d at 278–79; *Tongo*, 1994 WL 33967, at *4; *Rogers*, 898 F. Supp. at 220–21, 222 n.5;[3]

---

[2] Defendant also cites *Kungys v. United States*, in which the Supreme Court assumed and the parties did not dispute that denaturalization under 8 U.S.C. § 1451(a) of persons whose citizenship had been "procured by concealment of a material fact or by willful misrepresentation" required "misrepresentations or concealments that are both willful and material." 485 U.S. at 767. Relying on *Kungys*, Defendant argues that § 1015(a) should also include a materiality requirement because its purpose, like that of 8 U.S.C. § 1451(a), is to "punish the introduction of materially false information into the naturalization process." (Reply 9.) However, the language of 8 U.S.C. § 1451 is distinguishable from § 1015(a) in a crucial way: 8 U.S.C. § 1451 applies not to false statements but to "misrepresentations" and specifically refers to "concealment of a *material* fact." Indeed, the Court in *Kungys* found that 8 U.S.C § 1101(f)(6), which provides that an applicant shall be deemed not to be of "good moral character" if he "has given false testimony for the purpose of obtaining" immigration or naturalization benefits, did not include a materiality requirement, contrasting "misrepresentation," which has been held "in many contexts" to include an implied materiality requirement, with "false testimony," which has not. *Kungys*, 485 U.S. at 781 ("While we do not say that statutory use of the term "false" or "falsity" can never imply a requirement of materiality, such a requirement is at least not so commonly associated with that term as it is with misrepresentation."). With respect to the purpose of the statute, the district court in *Rogers* pointed out that even immaterial false statements "deflect the Immigration and Naturalization Service from learning the facts concerning [an applicant's] background, . . . a matter of appropriate governmental inquiry. It is not an answer to say that the facts thus hidden from view, if revealed, would not necessarily have resulted in the denial of naturalization. It is enough that there is every reason to believe that Congress in omitting a requirement of materiality . . . sought to punish such behavior . . . ." *Rogers*, 898 F. Supp. at 221.

[3] In *Rogers*, the court held that materiality was not an element of § 1015(a) because § 1015(a) was "virtually identical" to 18 U.S.C. § 1001, which the Second Circuit had "repeated[ly]" held did not include such an element. Defendant contends that *Rogers* is no longer good law because, one month after the decision, the Second Circuit reversed the "settled law of this Circuit" and held, in *United States v. Ali*, that materiality was an element of § 1001. 68 F.3d 1468, 1474–75 (2d Cir. 1995). The holding in *Ali*, however, was based on the court's interpretation of the Supreme Court's holding in *United States v. Gaudin*, that the element of materiality under § 1001 must be determined by the jury, 515 U.S. 506, 522–23 (1995), as having been "premised on [the Court's] implicit view that materiality is indeed an element of the offense." *Ali*, 68 F.3d at 1475. In *Gaudin*, the Court did not address whether materiality is an element of § 1001 because the government had conceded this point. *Gaudin*, 515 U.S. at 509. The Court has since made clear that *Gaudin* should not be read as holding that materiality was an element of § 1001. *See Johnson v. U.S.*, 520 U.S. 461, 465 (1997) ("[W]e merely assumed in *Gaudin* that materiality is an element of making a false statement under 18 U.S.C. § 1001."). Because *Ali* did not call into question the reasoning of *Rogers* or the Second Circuit cases upon which it relied, but instead was based on the *Ali* court's interpretation of the Supreme Court's views on the subject—an interpretation that turned out to be incorrect— it is not at all clear that the *Ali* decision rendered *Rogers* irrelevant.

Indeed, after *Ali* was decided, Judge Kaplan wrote an amended opinion to reaffirm the *Rogers* holding that materiality was not an element of § 1015(a) and expressly stated that the reasoning of the opinion survived both *Gaudin* and *Ali*. *United States v. Rogers*, 908 F. Supp. 219, 220 (S.D.N.Y. 1995) ("The court

6

*United States v. Rogers*, 908 F. Supp. 219, 220 (S.D.N.Y. 1995); *Youssef*, 2007 WL 666929, at *1–2. The only cases Defendant identifies holding that § 1015(a) or a related predecessor statute includes a materiality requirement are three older district court cases, *United States v. Grottkau*, 30 F. 672 (E.D. Wis. 1887), *United States v. Bressi*, 208 F. 369 (W.D. Wash. 1913), and *United States v. Laut*, 17 F.R.D. 31 (S.D.N.Y. 1955).[4] In *Grottkau*, the court interpreted Section 5395 of the Revised Statutes of the United States, enacted in 1870, which prohibited "knowingly swear[ing] falsely" in an oath or affidavit relating to the naturalization of aliens. *Grottkau*, 30 F. at 673. Analogizing to common law perjury, the court found that this statute included a materiality requirement. *Id.* at 674. The *Bressi* opinion was based solely on the court's finding, without citation, that "courts have uniformly held, in considering [other predecessor statutes related to § 1015(a)] . . . that the testimony must be material." *Bressi*, 208 F. at 371. The *Laut* opinion was based on the court's belief that Congress intended § 1015(a) to reach only "false testimony likely to mislead . . . officials in the conduct of their appointed tasks," and not, for example, questions that were "merely 'preliminary in nature' . . . though they might [lead] to later relevant questions." *Laut*, 17 F.R.D. at 34. The court also noted that

---

remains of the view that materiality is not an element of the offense under 18 U.S.C. §§ 1015(a) or 1425(a) for the reasons stated in *Rogers*. Neither *Gaudin* nor *Ali* controls this issue."). Judge Kaplan again cited the reasoning of *United States v. Silver*, which had held that materiality was not an element of § 1001, 235 F.2d 375, 377–78 (2d Cir. 1956), and which *Ali* had overruled. *Rogers*, 908 F. Supp. at 220. Specifically, the *Rogers* court "was persuaded by . . . Congress's failure to enact an express requirement of materiality in the statute and the fact that it quite reasonably could have concluded that even an immaterial omission or false statement should be punished because it could 'obstruct, delay, or deflect an inquiry.'" *Id.*

[4] Other cases cited by Defendant do not support his position. *See, e.g., United States v. Rogers*, No. 96-1197, 1996 WL 685759, at *1 (2d Cir. Nov. 29, 1996) ("It is unnecessary for us to address the question whether [18 U.S.C. § 1015(a)] require[s] 'material' false statements."); *United States v. Bridges*, 199 F.2d 811, 817, 829 (9th Cir. 1952) (on appeal of defendant's conviction for violation of 18 U.S.C. § 1015(a), considering the materiality of the defendant's false statements without discussion of whether the statute required materiality); *United States v. Udani*, 141 F. Supp. 30, 31–32 (S.D. Cal. 1956) (considering the materiality of false statements alleged to violate 18 U.S.C. § 1015(a) without discussion of whether the statute required materiality).

7

"courts have without exception held that, though materiality is not specified, the false statements alleged must be material to the matter at bar," citing *Bressi* and two cases which do not support *Laut*'s holding. *Id.* The Court finds these cases unpersuasive because, among other things, the opinions do not give proper weight to the text of the statute. *See, e.g., Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) ("The starting point in discerning congressional intent is the existing statutory text and not the predecessor statutes." (citation omitted)).[5]

Finally, Defendant argues that the existence of a materiality requirement in § 1015(a) is supported by the fact that Congress has never amended the statute to clarify that it includes no materiality requirement, despite court decisions holding that the statute includes such a requirement. The Court is not persuaded. The Supreme Court has cautioned that "it is at best treacherous to find in congressional silence alone the adoption of a controlling rule of law." *Wells*, 519 U.S. at 496 (quoting *NLRB v. Plasterers' Local Union No. 79*, 404 U.S. 116, 129–30 (1971). In this case, Congressional inaction is particularly ambiguous because there are relatively few cases addressing this issue and these cases have reached mixed conclusions. As noted, the majority of cases have found that § 1015(a) does *not* require materiality. Therefore, even if Congressional inaction

---

[5] The Court notes that there is some uncertainty regarding the statutory history of § 1015(a). According to some courts, the statute originally included a materiality requirement, which was omitted when the statute was reenacted in 1909. *See United States v. Abuagla*, 215 F. Supp. 2d 684, 685 (E.D. Va. 2002); *Laut*, 17 F.R.D. at 34 n.4; *Bressi*, 208 F. at 370–71. The parties relied upon this version of events in their briefs, each arguing that the statutory history supported its interpretation. (Opp'n 9–10; Reply 6–7.) At oral argument, however, the government stated that its own research indicated that § 1015(a) and its predecessor statutes had never included a materiality requirement and that the statute from which the reference to "materiality" was dropped in 1909 was Section 23 of the Act of June 29, 1906, a predecessor to a different statute, 18 U.S.C. § 1425. (April 4, 2008 Tr. 13–17.) Not surprisingly, each party now argues that the government's version of the statutory history also supports its interpretation. The Court need not reconstruct the genealogy of § 1015(a), however, because the statutory text is clear and because neither version of the statutory history supports Defendant's interpretation.

8

were deemed to indicate approval of the courts' interpretations of the statute, such inaction would not obviously support Defendant's position.

## CONCLUSION

For the reasons stated, Defendant's motion to dismiss **[17]** is DENIED.

SO ORDERED.

Dated: New York, New York
August 8, 2008

_____
Richard J. Holwell
United States District Judge